UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN A. HAWTHORNE,

    Plaintiff,                                        Civil Action No. 07-10422

v.                                                     HON. PAUL D. BORMAN
                                                       U.S. District Judge
                                                       HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On February 2, 2004, Plaintiff filed an application for DIB, alleging an onset date of June 1, 2003 (Tr. 38-40). After the initial denial of benefits on May 4, 2004, Plaintiff submitted a timely request for an administrative hearing, held on April 12, 2006 in Oak Park, Michigan (Tr. 341). Administrative Law Judge ("ALJ") Alexander Weir presided (Tr. 341).

-1-

Plaintiff, represented by attorney Justen Grech, testified (Tr. 346), as did Raymond Dulecki, a vocational expert ("VE") (Tr. 347). On May 13, 2006, ALJ Weir found that Plaintiff retained the ability to perform her past relevant work as well as work at the medium exertional level (Tr. 21). On November 28, 2006, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review of the final decision on January 26, 2007.

## BACKGROUND FACTS

Plaintiff, born January 28, 1951, was age 55 when the ALJ issued his decision (Tr. 38). Plaintiff received a GED and worked previously as a power sewer (Tr. 47). She alleges disability as a result of lower back, hand, arm, shoulder, and knee pain (Tr. 46).

### A. Plaintiff's Testimony

Plaintiff testified that she lived in Clinton Township, Michigan (Tr. 346). She stated that aside from a typing class, she had not acquired special skills (Tr. 349). She reported working as a sewing machine operator from 1969 to June 1, 2003 when she was laid off as a result of plant closings (Tr. 350). She indicated that she experienced neck, shoulder, arm, and hand problems prior to her dismissal, adding that her position had been subject to periodic but temporary restrictions on "grasping, squeezing, pulling or lifting" (Tr. 351). Plaintiff reported that since leaving work, she had been hospitalized for conditions unrelated to her application for benefits (Tr. 351).

Plaintiff testified that she had been diagnosed with "classic carpal tunnel" (Tr. 352). She indicated that she avoided stairs (apparently due to back and knee problems) reporting further that Carpal Tunnel Syndrome ("CTS") limited her ability to perform fine

manipulations (Tr. 352). She alleged that hand and wrist pain obliged her to take sleeping pills (Tr. 352-353). Plaintiff also stated that due to sleeping problems as well as knee pain and swelling, she regularly napped for approximately two hours each day (Tr. 353). She estimated that she experienced knee pain and swelling up to three times a week, adding that she obtained relief by elevating and icing her knee (Tr. 354). Plaintiff testified that knee pain limited her to standing for less than two hours at a time (Tr. 354).

Plaintiff, indicating that she currently received a pension, reported she left work in 2003 after accepting a buyout offer of $35,000 (Tr. 355). She stated that her job required her to work with scissors, but after complaining of CTS, she received a number of temporary work restrictions before resuming her usual job duties (Tr. 356). She indicated that before accepting a buyout, she considered alternative jobs offered by her employer but concluded that CTS precluded her from fulfilling the positions' requirements (Tr. 358). Plaintiff testified that since taking the buyout, she had unsuccessfully attempted to find other work (Tr. 358).

Plaintiff stated that CTS prevented her from golfing or yard work, but reported that she often read books and watched television (Tr. 360). She acknowledged that she continued to drive and shop regularly, adding that she attended church on a monthly basis (Tr. 361-363). Plaintiff reported that right knee pain created difficulty kneeling (Tr. 365).

### B. Medical Evidence

### 1. Treating Sources[1]

In July and August, 1998, Plaintiff's treating physician Vinod Kohli, M.D. prescribed work restrictions including "no excessive pulling or gripping with both hands for 90 days" (Tr. 204, 263). A September, 1999 MRI of Plaintiff's lumbo-sacral spine showed only mild degenerative changes (Tr. 259). In February, 2001, Plaintiff received treatment for a respiratory infection (Tr. 253).

In April, 2003, Plaintiff underwent chiropractic treatment for shoulder, neck, arm, and joint pain (Tr. 90). In May, 2003, Plaintiff sought continued treatment for hand, arm, shoulder, and neck pain (Tr. 231). Plaintiff reported to Mohamed D. Elnabtity, M.D. that pain and numbness created sleeping difficulties (Tr. 231). Elnabtity advised Plaintiff to undergo an MRI and nerve conduction studies (Tr. 233). Treating notes from the same month indicate that Plaintiff sat "comfortably in no apparent distress" (Tr. 95). An MRI performed the same month showed "mild central bulging at C6-C7" as well as "some spondylotic degenerative changes at C3-C4" (Tr. 103, 217). The following week, nerve conduction studies showed the presence of bilateral CTS "more prominent on the right" but "otherwise unremarkable" results (Tr. 216). Notes from a February, 2004 exam show that Plaintiff's shoulder was mildly tender (Tr. 190).

In February, 2004, Gobind L. Garg, M.D. advised Plaintiff to quit smoking and avoid

---

[1] Plaintiff's longtime treating physician, Vinod Kohli, has provided treating records dating back to 1985. However, because the older records are irrelevant to Plaintiff's current claim, the Court will limit its discussion of Kohli's notes to those created in the past 10 years.

fatty foods (Tr. 312). EKGs performed in February and May, 2004 showed "minor T wave changes . . . in the inferior leads" (Tr. 312, 314). An April, 2004 stress test was "considered essentially within normal limits" (Tr. 330). Garg diagnosed Plaintiff with "cardiac arrhythmia, minor ST-T changes in the electrocardiogram, and mild COPD" (Tr. 314). In June, 2004, Plaintiff underwent a urethral diverticulrectomy (Tr. 177). Ajay K. Singla, M.D. found in July, 2004 that Plaintiff had "recovered completely from surgery" (Tr. 177). In February, 2005, Plaintiff again complained of urethral burning, and underwent a second urethral diverticulectomy in July, 2005 (Tr. 164-175).

On April 17, 2006, Dr. Singla submitted an opinion letter stating that despite the use of "chiropractic manipulation and [a] muscle relaxant," Plaintiff continued to experience "neck pain, bilateral arm pain, shoulder pain and numbness of hands for a prolonged period of time" (Tr. 179). Dr. Singla indicated further that he had referred Plaintiff to Dr. Bhagat, a hand surgeon for CTS release (Tr. 179). Dr. Singla concluded, based on his most recent examination in July, 2004, that Plaintiff "was not able to work effectively at Ford Motor Company and she was not able to work at a job which require[d] her to work 40 hours a week and 8 hours at day" (Tr. 180).

### 2. Consultive and Non-Examining Sources

In April, 2004, E. Montasir, M.D. performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 129-133). Dr. Montasir, observing that EMG studies showed the presence of CTS and mild degenerative disc disease, noted that Plaintiff also reported neck,

shoulder, and arm discomfort (Tr. 129). Plaintiff denied all surgery except for a facelift performed eight months earlier (Tr. 129-130). A review of systems showed the absence of leg swelling or joint inflamation (Tr. 131). Dr. Montasir noted further that "[a]ll movements of the cervical spine are normal and pain free" (Tr. 130). Plaintiff demonstrated 5/5 grip strength in both hands (Tr. 131). Dr. Montasir made the following conclusion:

> "Patient had some osteoarthritis of the cervical spine. *This is not limiting any activities.* There was no rediculopathy. EMG testing was only positive for carpal tunnel syndrome bilaterally. That can be treated with surgery or injections. Hover, there was no muscle atrophy. There was no significant neuropathy. Patient has some tenderness in the neck, but range of motion was satisfactory"

(Tr. 131)(emphasis in original).

The same month, a Residual Functional Capacity Assessment found that Plaintiff retained the ability to lift 50 pounds occasionally and 25 pounds frequently; stand, sit, or walk for about six hours in an eight-hour workday with an unlimited ability to push or pull in both extremities (Tr. 135). The assessment also found the absence of postural, manipulative, visual, communicative, or environmental limitations (Tr. 136-138). The report noted that "objective medical evidence" documented the presence of CTS (Tr. 139).

### C. Vocational Expert

VE Raymond Dulecki classified Plaintiff's past relevant work as a power sewer as semi-skilled at the light exertional level (Tr. 347). Taking into account Plaintiff's age, education, and work background, the ALJ posed the following hypothetical question:

> "Hypothetical number one is a person capable of light work. This person has

a limitation in the use of their hands, for both fine motor and gripping and grasping. They are precluded from using them continuously, that would be more than frequently, but frequently and occasionally are acceptable. Could such a person do the past relevant work of this claimant?"

(Tr. 251). The VE replied that the individual described above would be unable to perform Plaintiff's past relevant work, but could perform the unskilled, exertionally light work of a visual inspector (20,000 positions in Southeastern Michigan), janitor (10,000), and hand packager (5,000) (Tr. 367).[2] In response to the ALJ's observation that the Dictionary of Occupational Titles classified janitorial work as exertionally "medium," the VE testified that based on his own experience in job placement, a number of janitorial positions could be classified as exertionally "light" (Tr. 369). The VE found that if the limitations were to include the need to lie down during the day, all work would be precluded (Tr. 368).

The ALJ, noting that Plaintiff, currently 55, would be eligible for benefits if she was limited to exertionally light work, then suggested that Plaintiff amend her onset date to her 55th birthday (Tr. 348). Plaintiff declined to amend her onset date on the basis that prior to her 55th birthday, she had undergone "two surgeries on her urethra and other conditions" that prevented her from working (Tr. 349).

### D. The ALJ's Decision

---

[2] In the present case, the hearing format deviated from the usual procedure wherein the VE testifies after the completion of the claimant's examination. Here, the ALJ posed a hypothetical question to the VE at the beginning of Plaintiff's examination, followed by Plaintiff's testimony. The ALJ then allowed Plaintiff's counsel to submit a hypothetical question to which the VE made job findings (Tr. 367). The VE later stated that the job findings to the ALJ's original hypothetical question would be identical to the job numbers given in response to counsel's question (Tr. 368-369).

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of "mild degenerative disc disease of the cervical spine and a history of bilateral carpal tunnel syndrome" (Tr. 15, 20). Nonetheless, he found that Plaintiff's severe impairments failed "to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4" (Tr. 16, 20). He determined that Plaintiff retained the residual functional capacity (RFC) for medium work:

> "She can lift and carry up to 50 pounds occasionally and 25 pounds frequently, and can stand and walk for up to 6 hours and can sit for up to 6 hours in an 8 hour day, with normal breaks. She can push and pull without significant limitations. She has no other limitations"

(Tr. 21). The ALJ found that Plaintiff was capable of performing her past relevant work as a power sewer which was performed at the light exertional level (Tr. 21).

The ALJ supported his determination by stating that he found Plaintiff's allegations of limitation "not totally credible," noting that she "has not generally received the type of medical treatment one would expect for a totally disabled individual" (Tr. 18, 20). He also found that Plaintiff "stopped working because she retired when her plant closed rather than because of the allegedly disabling impairment," noting that "[a] reasonable inference, therefore, is that the claimant's impairments would not prevent the performance of that job, since it was being performed adequately at the time of the retirement despite a similar medical condition" (Tr. 19). He observed further that Plaintiff continued to prepare meals, shop, drive, and socialize (Tr. 19).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Advanced Age

Plaintiff argues that the ALJ failed to support his determination that she could perform her past relevant work as a power sewer. *Plaintiff's Brief* at 10-16. She also faults the ALJ for omitting all mention of the VE's hearing testimony from his decision, contending that the VE's job findings limiting her to light, unskilled work were impermissibly ignored. *Id.* at 16.

In the case of a claimant age 55 or older, whether the ALJ poses a question describing a capacity for medium or light work in a Step Five determination is pivotal to the ultimate disability question. Under Medical-Vocational Rule 202.04, a claimant of "advanced age" limited to unskilled work at the *light* exertional level (the ability to lift 20 pounds occasionally and ten pounds frequently (as opposed to the *medium* requirement of 50 pounds occasionally and 25 pounds frequently) is deemed disabled. 20 C.F.R. § 416.967(b).

-10-

### 1. Step Four Determination

As a threshold matter, Plaintiff is mistaken in the belief that Medical-Vocational Rules guarantee her a finding of disability. In light of the ALJ's Step Four finding that Plaintiff could perform her past relevant work, the Medical-Vocational Rules are inapplicable. The Medical-Vocational Rules "come into play at *step five* of the sequential evaluation." *Lowery v. Commissioner of Social Security,* 342 F.Supp.2d 694, 699 (E.D.Mich.2004)(Lawson, J.)(emphasis added). *See also Preslar v. Secretary of Health and Human Services,* 14 F.3d 1107, 1110-1111 (6th 1994). Further, while Plaintiff faults the ALJ for declining to adopt or mention the VE's testimony, ALJs are permitted but not required to use a VE in making a Step Four determination. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *See also Mays v. Barnhart,* 78 Fed. Appx. 808, 813-814 (3rd Cir. 2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ."). Moreover, substantial evidence supports the ALJ's decision to ignore the VE's job findings which were made in response to hypothetical limitations that he "ultimately rejected." *Defendant's Brief* at 18; *Varley v. Secretary of Health and Human Services,* 820 F .2d 777, 779 (6th Cir. 1987).

### 2. Substantial Evidence

More fundamentally, record evidence supports the ALJ's substantive finding that Plaintiff could perform her past relevant work at the light exertional level as well as a full range of work at the medium level of exertion. As discussed more fully in Sections B. and C, *infra*, the ALJ supported his determination by citing the absence of aggressive medical

treatment, Plaintiff's daily activities, and the fact that her alleged onset of disability "coincided" with the date of her retirement (Tr. 18-19).

For the same reasons, I disagree with Plaintiff's contention that the ALJ's determination that she could perform medium work stands at odds with his earlier suggestion that she amend her onset of disability date to her 55th birthday (Tr. 348-349). Despite the fact that the ALJ was apparently willing to grant benefits as of January 28, 2006, Plaintiff refused this offer after consulting with her attorney (Tr. 349). Admittedly, the ALJ was still required to consider whether a claimant was disabled for *any* period exceeding 12 months within the alleged disability time frame.[3] Despite the fact that Plaintiff refused to concede her claim for benefits as of June 1, 2003 and forward, the ALJ was nonetheless required to consider whether Plaintiff was disabled for a shorter period.[4]

However, notwithstanding the ALJ's preliminary offer of disability benefits as of Plaintiff's 55th birthday, substantial evidence supports the ALJ's ultimate finding of the

---

[3] "In determining whether Plaintiff is entitled to disability benefits, it is also necessary to consider every during which Plaintiff may have been disabled. . . ." *Pena v. Barnhart,* 2002 WL 31487903, *11 (S.D.N.Y. 2002)(emphasis added).

[4] This Court found recently that an ALJ's statement at hearing that the plaintiff was eligible for a closed period stood at odds with the administrative decision denying all benefits. "A remand is required, if for nothing else, to resolve the conflict between the ALJ's acknowledgment that Plaintiff is eligible for a closed period of benefits and his unfavorable administrative decision." *Miracle v. Commissioner of Social Security*, Case no. 06-14510, September 18, 2007. However, in *Miracle,* the record shows that the claimant, unrepresented by counsel at the hearing, did not fully understand the ALJ's offer to grant a closed period of disability in exchange for conceding her claim to ongoing benefits. In contrast to the present case, the medical records for the closed period strongly supported the conclusion that the plaintiff had been disabled for a closed period of at least 12 months. *Id.* at 12, FN4.

absence of *any* period of disability. Plaintiff's testimony subsequent to the ALJ's offer, acknowledging that she claimed disability at the same time she was accepting an early retirement buyout package, supports the conclusion that her "impairments would not prevent the performance of that job, since it was being performed adequately at the time of the retirement" (Tr. 19).

### B. Treating Physician Analysis

Plaintiff contends further that the ALJ erred in giving "no weight" to Dr. Kohli's April, 2006 that she was disabled. *Plaintiff's Brief* at 17; Tr. 19, FN 5. She argues that SSR 96-2 forbids the ALJ from completely discounting a treating physician's findings. *Id.*

SSR 96-2 instructs that in the event a treating physician's finding conflicts with other evidence, this "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *See also Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) ("it is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference.") *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004) holds as follows:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

Moreover, regardless of whether substantial evidence is found elsewhere in the record

to contradict the source's findings, *Wilson* at 544, *citing* 20 C.F.R. § 404.1527(d)(2), instructs that the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion.

Contrary to Plaintiff's argument, the ALJ provided ample reasons for rejecting Dr. Kohli's April, 2006 disability opinion. Plaintiff's conclusion that SSR 96-2 proscribes the rejection of a treating source finding relies on a misreading of the Ruling. Certainly, the Ruling cautions that the mere existence of conflicting evidence does not permit the ALJ to reject the treating source's opinion without further analysis. However, 20 C.F.R. § 404.1527(d)(2) clearly allows the ALJ to discount a treating source opinion provided that he supplies "good reasons" for doing so. *Wilson,* at 544; 20 C.F.R. § 404.1527(d)(2). Moreover, the interpretation of SSR 96-2 advanced by Plaintiff would effectively allow the treating source, rather than the Commissioner, to make the disability determination, standing at odds with the Regulation's requirement that this determination is "reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(3).

Moreover, the ALJ provided a thorough analysis of Dr. Kohli's finding, noting that his April, 2006 letter acknowledged that he had not seen Plaintiff since July, 2004 (Tr. 19, 179). The ALJ also noted that although Dr. Kohli's letter indicated that Plaintiff had been referred to another physician for carpal tunnel release, none of her treating records indicate that she had proceeded with the recommended treatment (Tr. 19, FN5-6, 179). The ALJ reasonably concluded that the letter was "an attempt to bolster the claimant's claim for benefits" rather than a meaningful assessment of her capacity for work. (Tr. 19 FN5).

**C. Credibility**

Finally, Plaintiff contends that the ALJ failed to support his reasons for rejecting her allegations of limitations. *Plaintiff's Brief* at 18-19. She deems the credibility analysis "conclusory," arguing that the determination violated the requirement that the ALJ provide "specific reasons for the finding on credibility, supported by the evidence in the case record . . ." *Id*.; SSR 96-7p.

An ALJ's decision must be based on specific reasons for the findings of credibility, supported by substantial evidence in the record. SSR 96-7p. *See also Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001). However, as a rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson, supra,* 402 U.S. at 401. An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986).

I disagree that the ALJ's credibility analysis was either procedurally or substantively inadequate. The ALJ supported his finding that Plaintiff's allegations were "not totally credible" by noting that she had not undergone surgery or received injections for symptoms of CTS [5] (Tr. 18). He also observed that "the record indicates that the claimant stopped

---

[5] However, the ALJ made the apparently erroneous finding that Plaintiff did not use splints(Tr. 18). In fact, Plaintiff testified that she used "braces" ( Tr. 352-353).

working because she retired when her plant closed rather than because of the allegedly disabling impairment" (Tr. 19). While Plaintiff contends that her treatment records leading up to her retirement date support her contention that CTS rendered her disabled around the same time as her planned retirement, the ALJ correctly noted that none of her treating records from the same period suggest that she was permanently disabled (Tr. 19). The ALJ also found reasonably that Plaintiff's admission that she had recently applied for a job stood at odds with her allegations of disability (Tr. 19).

Additional record evidence supports the administrative determination. Plaintiff alleged monetary problems, but her lack of aggressive treatment for CTS cannot be attributed to financial limitations; the record shows that she was able to afford cosmetic surgery after her June 1, 2003 alleged onset of disability (Tr. 130). Consultive examination notes from April, 2004 indicate that Plaintiff retained 5/5 grip strength in both hands and the absence of muscle atrophy (Tr. 131). While imaging studies show that Plaintiff experienced osteoarthritis of the cervical spine, notes from the same exam conclude that the condition did not limit her activities (Tr. 131). Moreover, while Plaintiff contends that the ALJ failed to consider her limitations as a result of urethral procedures and various cardiac and pulmonary problems, her application for DIB omits mention (much less allegations of work-related limitations) as a result of these conditions (Tr. 46).

This administrative decision is well within the "zone of choice" accorded to the fact-

---

Nevertheless, since the credibility determination is supported otherwise by an abundance of evidence, this error should be deemed harmless.

finder at the administrative level. Pursuant to *Mullen v. Bowen, supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

          s/R. Steven Whalen
          R. STEVEN WHALEN
          UNITED STATES MAGISTRATE JUDGE

Dated: October 30, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 30, 2007.

          s/Susan Jefferson
          Case Manager